71 So.2d 232 (1954)
MATTHEWS
v.
HANSBERRY.
No. 20245.
Court of Appeal of Louisiana, Orleans.
March 29, 1954.
*233 Lansing L. Mitchell, New Orleans, for plaintiff-appellant.
Taylor Caffery, New Orleans, for defendant-appellee.
JANVIER, Judge.
The appeal in this matter was taken from the Civil District Court for the Parish of Orleans to the Supreme Court and by that Court transferred to us "because of lack of jurisdictional amount." See 223 La. 773, 66 So.2d 803, 804.
The parties, Straight Matthews and Morena Hansberry, formerly husband and wife, were divorced by judgment of the Civil District Court for the Parish of Orleans, which judgment was signed on May 7, 1952. They had been married on March 8, 1947, and had lived together from that time until sometime after October 6, 1949. On November 29, 1951, Matthews, the husband, filed suit for divorce on the ground that he and his wife had been living separate and apart for two years. He prayed that an inventory be taken of the community property, that the community be divided, and that he be recognized as entitled to an undivided one-half interest in the said community.
On June 16, 1952, plaintiff, Straight Matthews, filed another petition setting forth the divorce and also setting up the community assets and asked for a partition by licitation of certain movables and for further judgment in his favor for $1,435.07 representing his share of an obligation owed the community by his wife's separate estate. When the matter was tried below there was no evidence concerning the value of the movables and the Court was informed that an agreement had been reached concerning the movables. There was then judgment in favor of plaintiff, Straight Matthews, for the sum of $200. This was followed by the appeal to the Supreme Court, which, as we have said, was transferred to us.
As found by the Supreme Court, the only amount in controversy was $1,435.07 which was claimed by the plaintiff, Straight Matthews. We were told in oral argument, and we find from the record, that the controversy arises because of the fact that during the marriage there was paid the balance due on a mortgage bearing on certain *234 real estate owned in indivision by the defendant, Morena Hansberry, and her sister. The one-half interest owned by the defendant formed the separate paraphernal property of the defendant. The balance due on this debt at the time of the marriage was $4,408, and this, together with interest amounting to $421.17, was paid between the time of the marriage and the date of the final payment which was on October 6, 1949, before the suit for divorce was filed. Thus in that time there was paid a total of $4,829.17.
It is conceded that one-half of this total amount was paid by the sister of the defendant, so that the total amount which was paid on account of the defendant's one-half interest in the real estate was $2,414.58.
There is some contention by plaintiff that some part of the amount which was paid to retire his wife's half of the debt came from cash which he had, but we are convinced, as was the district judge, that no part of this money came from his separate funds.
There is also a contention by the defendant, Morena Hansberry, that some part of the money used to retire the loan came from a fund inherited by her in 1935, which she says "might have been around seven or eight hundred dollars." We do not find in the record any real substantiation of this contention.
Our conclusion is that all of the money which was used to retire the defendant's one-half of this debt on her separate property came from earnings of the plaintiff, earnings of the defendant, and rental of the property itself.
Thus the only question which confronts us is whether the funds which resulted from rental of the property and from the earnings of the wife fell into the community, with the result that the community should be credited with those amounts and the ultimate result that plaintiff, in the settlement of the community, is entitled to a credit of one-half of those amounts.
Counsel for plaintiff relies upon Article 2386 of our LSA-Civil Code, the pertinent portion of which reads as follows:
"The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by a written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses and duly recorded in the Conveyance Records of the Parish where the community is domiciled."
Counsel for defendant, conceding that defendant did not execute such an instrument as is required by this article, maintains that there is a conflict between the provisions of this article and those of Article 2406, and that the latter should control for the reasons which we shall hereafter set forth.
"The effects which compose the partnership or community of gains, are divided into two equal portions between the husband and the wife, or between the heirs, at the dissolution of the marriage; and it is the same with respect to the profits arising from the effects which both husband and wife brought reciprocally in marriage, and which have been administered by the husband, or by husband and wife conjointly, although what has been thus brought in marriage, by either the husband or the wife, be more considerable than what has been brought by the other, or even although one of the two did not bring anything at all."
Counsel for defendant says that prior to the amendment of Article 2386, which was effected by Act No. 286 of 1944, there *235 was no conflict between the two articles, and that the amendment was passed not to produce the effect contended for by plaintiff, but "for the purpose of allowing the majority of Louisiana married persons to take full advantage of the joint return provisions of Federal Income Tax Laws." And counsel also says that
"the Federal Taxing Authorities had been cracking down on cases in which joint returns were filed on income that actually, under the old article 2386, remained the separate income of the wife. The legislature realized that it would be much easier to change the Codal Article than to attempt to educate or get over to all married people in the State that the husbands should be permitted some administration over the wife's separate property if joint Federal Taxation benefits were to be taken advantage of."
In K. & M. Store, Inc. v. Lewis, La.App., 22 So.2d 769, 771, the Court of Appeal for the First Circuit said:
"If there is no separation of property between husband and wife and the paraphernal property of the wife is administered by the husband, or by him and the wife indifferently, the fruits of this property, whether natural, civil or the result of labor, fall into the community. Civil Code, Article 2386. And by Act 286 of 1944 (which Act was in effect when the funds in controversy in this suit were earned), in order for the wife to retain for her own use the fruits of her separate property and its separate administration, she must execute and record a notarial act making the necessary declaration to that effect."
In United States v. Burglass, 172 F.2d 960, 963, the United States Circuit Court of Appeals for the Fifth Circuit, considering the effect of Article 2386 of our Code, as amended, said:
"Under Louisiana law, as now written, the fruits and issues of the separate properties of the spouses fall into the community, the sole exception being where the wife has executed and placed of record a written instrument in accordance with the requirements of the 1944 act."
In Trorlicht v. Collector of Revenue, La. App., 25 So.2d 547, 551, we discussed the effect of and the probable reason for Act, No. 286 of 1944, which amended Article 2386, and said:
"* * * It seems to us to evidence nothing more than a realization by the legislators of the fact that there may often be doubt as to how and by whom a wife's separate estate is administered and possibly a realization of the fact that in all fairness the fruits of a wife's separate property should go to the community unless she expressly declares that she does not desire this result."
We think that Article 2386 admits of no other interpretation than that which was given to it in the above cited cases. Whatever may be the intention of the wife, she is not permitted to claim that any funds produced by her labor or fruits of her separate estate do not fall into the community unless, in compliance with the requirements of Article 2386, she has, before a notary public and two witnesses, executed a statement declaring her reservation of the fruits of her separate property and her intention to separately administer her property and has recorded that document in the conveyance records of the parish where the community is domiciled.
If there is any conflict between the provisions of Article 2386 and those of Article 2406, those of Article 2386 must control because the particular provision now under consideration resulted from an amendment in 1944 long after the adoption of Article 2406. But we think that there is not necessarily any conflict between the two articles. Article 2386, as the result of the amendment of 1944, makes provision for the fruits of the separate estate of the wife who separately administers the property from which the funds are derived, and *236 it provides that those fruits fall into the community unless she has executed the required document. Article 2406 makes no provision for the fruits of the separate property of the wife when the separate property is administered by the wife herself. Counsel says that since no provision is made for those fruits, it necessarily follows that the article should be treated as providing that such fruits should be considered as the separate property of the wife. This conclusion might seem logical were there no express provision to the contrary in Article 2386.
We next consider the final argument of counsel for defendant that even if we should conclude that the amounts paid on the principal should be considered as having been paid on account of the community, the interest payments should be treated differently and that no credit should be given to the community for the payment of interest. We are unable to follow this argument.
It seems quite obvious that if the fruits of the labor of the wife and the fruits of the separate property of the wife are to be treated as having fallen into the community and those fruits are then devoted to the retirement of the principal and interest which is due by the separate property of the wife, then the entire amount so paid should be credited to the community and charged against the separate property of the wife.
Counsel also argue that such a conclusion is inequitable and works an unjust hardship upon the wife in such situation. We considered such an argument in Trorlicht v. Collector of Revenue, supra, and said:
"The third fact to which counsel point is what they seem to think is the inequality in the provisions of the Code that all of the fruits of the husband's separate property fall into the community whereas in the case of the wife the fruits fall into the community only if the husband has had a hand in the administration of the separate property. We shall not enter into a discussion of the wisdom or the fairness of these provisions. All that we can say is that it is obvious that the framers of the Code did just what counsel complain of. If there is anything unfair in the articles on the subject we are powerless to remove the inequality."
Our conclusion is that the husband is entitled to credit for one-half of the amounts so paid. We find that during the marriage there was paid the principal of $4,408, and that there was also paid interest of $421.17, thus making the total paid the sum of $4,829.17. Of this, defendant's sister paid one-half, so that there should be credited to the community $2,414.58, the amount which was necessary to retire the other half. Of this, one-half, or $1,207.29, should be credited to the plaintiff.
The judgment appealed from is amended by the increase of the amount awarded to plaintiff to $1,207.29. In all other respects the judgment appealed from is affirmed. Each party is to bear his or her own costs.
Amended and affirmed.